# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF NEW YORK

№ 16-CV-05303

### RICARDO PEREZ CAMPOS AND GERARDO GONZALEZ,

Plaintiffs,

VERSUS

### QUENTIN MARKET CORP. (D/B/A QUENTIN MARKET), WON KE LEE, SEAN OH, AND SUSAN JONG LEE,

Defendants.

**REPORT & RECOMMENDATION**

October 17, 2018

**to the Honorable Dora Lizette Irizarry
United States Chief District Judge**

**RAMON E. REYES, JR., U.S.M.J.:**

Ricardo Perez Campos ("Perez Campos") and Gerardo Gonzalez ("Gonzales") (collectively, "Plaintiffs") commenced this action on September 23, 2016, alleging multiple violations of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201 *et seq*. and the New York Labor Law ("NYLL"), NYLL §§ 190 *et seq.* by Quentin Market Corporation ("Quentin Market" or "Corporate Defendant") and individual defendants Won Ke Lee ("W.K. Lee"), Sean Oh ("Oh"), and Susan Jong Lee ("S.J. Lee") (together with W.K. Lee and Oh, "Individual Defendants") (collectively, "Defendants"). (Dkt. No. 1 ("Compl.") at 3-5). Defendants have failed to appear in this action since May 22, 2017. (Dkt. No. 17). Plaintiffs now move for Default Judgment against all Defendants pursuant to Federal Rules of Civil Procedure Rule 55(b)(2). (Dkt. No. 36). Your Honor has referred this motion to me for a report and recommendation. (ECF Order dated 05/07/2018).

For the reasons set forth herein, I respectfully recommend that Your Honor

1

grant the Plaintiffs' motion for Default Judgment and award Plaintiffs $173,863.16 in damages, plus pre- and post- judgment interest.

## BACKGROUND

### I. Statement of Facts[1]

Defendants own and operate a supermarket in Brooklyn, N.Y., doing business as Quentin Market. (Compl. ¶ 14). Plaintiff alleges that Quentin Market had gross annual sales of over $500,000 in each year from 2010 to 2016, and that Quentin Market is directly engaged in interstate commerce. (Compl. ¶¶ 31-32). Plaintiff claims that each individual Defendant has an ownership interest in and exercises operational control over the Defendant Corporation. (Compl. ¶¶ 17, 20, 23). Plaintiff further alleges that the Individual Defendants operate the Defendant Corporation as an alter ego of themselves, or they fail to operate the Defendant Corporation as a legally separate entity. (Compl. ¶ 30).

Plaintiff Ricardo Perez Campos worked for Defendants from September 1996 to July 23, 2016, as a cashier, stock worker, general assistant, and handyman. (Compl. ¶¶ 35-36). He regularly handled goods in interstate commerce, and his duties required neither discretion nor independent judgment. (Compl. ¶¶ 37-38). From September 2010 until January 2015, Perez Campos worked eleven-hour shifts (9:00 A.M. until 8:00 P.M.) on Monday through Thursday and ten-hour shifts (9:00 A.M. until 7:00 P.M.) on Saturday and Sunday, for a total of sixty-four hours per week. (Compl. ¶ 40). From January 2015 until July 23, 2016, Perez Campos worked nine-hour shifts (10:00 A.M. until 7:00 P.M.) from Saturday to Thursday, for a total of fifty-four hours per week. (Compl. ¶ 41). From August 2010 to September 2015, Perez Camos received a fixed salary of $750 per week. (Compl. ¶ 43). From September 2015 to July 23, 2016, Perez Campos received a fixed salary of $800 per week. (Compl. ¶ 44).

Plaintiff Gerardo Gonzalez worked for the Defendants as a deli worker from September 2009 to July 23, 2016. (Compl. ¶ 51). He regularly handled goods in interstate commerce, and his duties required neither discretion nor independent judgment. (Compl. ¶¶ 53-54). From September 2010 until on or about November 2015, Gonzalez worked a twelve-hour shift (8:00 A.M. to 8:00 P.M.) on Mondays, Tuesdays, Thursdays, and Fridays, and an eleven-hour shift (8:00 A.M. to 7:00 P.M.) on Saturdays and Sundays, for a total of seventy hours per week. (Compl. ¶ 56). From November 2015 until July 23, 2016, Gonzalez worked from 9:00 A.M. to around 7:40 P.M. on Tuesdays through Sundays, for a total of approximately sixty-four hours per week. (Compl. ¶ 57). From August 2010 to January 2013, Gonzalez received a fixed salary of $560 per week. (Compl. ¶ 59). This amount increased to $580 per week from January 2013 to June 2015, and it increased again to $600 per week from June 2015 to July 23, 2016. (Compl. ¶¶ 60-61).

Defendants did not give either Plaintiff any meal or rest breaks. (Compl. ¶¶ 45, 62). Defendants did not provide either Plaintiff with any wage statement accounting for his hours or setting forth his rate of pay per hour, nor did Defendants provide any notices, posted or otherwise, regarding overtime and wages under the FLSA or NYLL. (Compl. ¶¶ 46-47, 63-64). Both Perez Campos and Gonzalez claim that Defendants

---

[1] These facts, which are all well-pleaded in the Complaint, (Dkt. No. 1), are accepted as true. *See Greyhound Exhibitgroup v. E.L.U.L. Realty Corp.*, 973 F.2d 155, 158 (2d Cir. 1992).

2

did not have any time tracking device to calculate their hours, but Defendants did require them to sign a document that incorrectly stated their arrival and departure times. (Compl. ¶¶ 48, 65).

Plaintiffs allege Defendants willfully violated the minimum wage and overtime provisions of the FLSA and NYLL. (Compl. ¶¶ 83-100). Plaintiffs also allege that Defendants willfully failed to provide spread-of-hours pay as required by the NYLL. (Compl. ¶¶ 101-104). Finally, Plaintiffs claim that Defendants violated the New York Wage Theft Prevention Act, NYLL §§ 195(1) and 195(3), by failing to provide notice of pay at hiring and proper wage statements with each pay check. (Compl. ¶¶ 105-110).

## II. Procedural History

Although two of the Defendants, Quentin Market and S.J. Lee, answered the complaint, (Dkt. Nos. 11, 15, 16), participated in the initial conference, (Minute Entry on 1/24/2018), and participated in mediation, (Dkt. No. 27 at 3:9-10), none of the Defendants have participated in this action since their attorney moved to withdraw on May 22, 2017. (Dkt. No. 17). After Defendants failed to appear at two conferences, (*See* Minute Entries for 6/27/2017 and 7/17/2017), Plaintiffs moved to strike the answers of Quentin Market and S.J. Lee and enter default against all Defendants. (Dkt. No. 29). On March 13, 2018, Your Honor granted Plaintiff's motion to strike the answers, (ECF Order dated 3/13/2018), and on March 14, 2018, the Clerk of the Court entered default against all four Defendants. Plaintiffs moved for Default Judgment on May 4, 2018, (Dkt. No. 36 ("Pls.' Mot.")), and Your Honor referred the motion to me for a Report and Recommendation. (ECF Order dated 05/07/2018).

## DISCUSSION

### I. Legal Standards

Rule 55 of the Federal Rules of Civil Procedure calls for a two-step process for obtaining a default judgment. *See Priestly v. Headminder, Inc.*, 647 F.3d 497, 504 (2d Cir. 2011). First, the plaintiff must request entry of default by the Clerk of the Court. *Id.* (citing Fed. R. Civ. P. 55(a)). Once default has been entered against the non-responsive parties, the plaintiff "must apply to the court for a default judgment." Fed. R. Civ. P. 55(b)(2). Once the plaintiff meets these requirements, the court must accept plaintiff's factual allegations as true and draw all reasonable inferences in plaintiff's favor. *Finkel v. Romanowicz*, 577 F.3d 79, 84 (2d Cir. 2009). The court must determine whether these facts establish the defendant's liability as a matter of law. *City of N.Y. v. Mickalis Pawn Shop, LLC*, 645 F.3d 114, 137 (2d Cir. 2011). The court "need not credit the plaintiff's legal conclusions." *Priestly*, 647 F.3d at 504.

Unlike liability, damages must have an evidentiary basis such that they can be "ascertained with reasonable certainty." *Cement and Concrete Workers Dist. Council Welfare Fund v. Metro Foundation Contractors, Inc.*, 699 F.3d 230, 234 (2d Cir. 2012). A plaintiff in an FLSA action bears the burden of proving the number of hours he worked. *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 686–87 (1946). However, where the employer fails to maintain adequate records, this burden is minimal and may be satisfied by testimony creating a "just and reasonable inference" that the employee worked the claimed hours. *See Pik Quan Leong v. 127 Glen Head Inc.*, 102 F.Supp.3d 450, 454 (E.D.N.Y. 2015). Regardless of what this evidence shows, the plaintiff's recovery is limited to the amount and type established in the complaint. Fed. R. Civ. P.

3

54(c) ("A default judgment must not differ in kind from, or exceed in amount, what is demanded in the pleadings."); *see also Silge v. Merz*, 510 F.3d 157, 160 (2d Cir. 2007). Thus, Plaintiffs must first establish liability based on the factual allegations in the Complaint and then establish damages based on their evidentiary submissions.

## II. Liability

### A. Coverage under the FLSA and NYLL

The minimum wage and overtime requirements of the FLSA and the NYLL apply to covered, non-exempt workers who are employed by an enterprise engaged in commerce. *Murphy v. Heartshare Human Servs. of New York*, 254 F. Supp. 3d 392, 395 (E.D.N.Y. 2017) (citing 29 U.S.C. § 201 *et seq.*; N.Y. Lab. Law § 652; 12 N.Y.C.R.R. § 142–2.1; 12 N.Y.C.R.R. § 142–2.2). The FLSA "enterprise" requirement is satisfied where the employee handles "goods or materials that have been moved in or produced for commerce" and the enterprise has "annual gross volume sales…not less than $500,000[.]" 20 U.S.C. § 203(s)(1)(i) & (ii). Plaintiffs' pleadings have satisfied this requirement as to Quentin Market. (*See* Compl. ¶ 31-32). Additionally, Plaintiffs performed the jobs of cashier, stock worker, handyman, deli worker, and general assistant. (Compl. ¶ 33). None of these positions is exempt from the FLSA or NYLL's minimum wage and overtime requirements. *See* 29 U.S.C. § 213(a)(1); N.Y. Comp. Codes R. & Regs. tit. 12, § 142-2.14. Therefore, Plaintiffs, as employees of Quentin Market, are covered by the FLSA and the NYLL.

#### i. *Individual Defendants are Joint Employers*

The FLSA defines an employer as "any person acting directly or indirectly in the interest of an employer in relation to an employee." 29 U.S.C. § 203(d). An employee may simultaneously have multiple "employers" who share joint liability for FLSA violations. *Chuchuca v. Creative Customs Cabinets Inc.*, No. 13-CV-2506 (RLM), 2014 WL 6674583, at *6 (E.D.N.Y. Nov. 25, 2014) (citing 29 C.F.R. § 791.2 ("A single individual may stand in the relation of an employee to two or more employers at the same time under the Fair Labor Standards Act . . . .")). The Second Circuit employs an "economic reality" test to determine whether an individual defendant is a joint employer for the purpose of assigning liability under the FLSA. *Irizarry v. Catsimatidis*, 722 F.3d 99, 104 (2d Cir. 2013). This test examines "whether the alleged employer (1) had the power to hire and fire the employees, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employment records." *Carter v. Dutchess Cmty. Coll.*, 735 F.2d 8, 12 (2d Cir. 1984). Even when an individual has not met these factors, "[a]uthority over management, supervision, and oversight of a company's affairs in general" may be sufficient to establish that an individual is an employer. *Catsimatidis*, 722 F.3d at 110. Accordingly, "a corporate officer with operational control of a corporation's covered enterprise is an employer along with the corporation." *Chuchuca*, 2014 WL 6674583, at *7 (internal quotations omitted).

Under the NYLL, the term employer "includes any individual . . . corporation, [or] limited liability company . . . acting as employer." N.Y. Lab. Law § 651(6). The existence of an employer-employee relationship is based on "the degree of control exercised by the purported employer." *Fermin v. Las Delicias Peruanas Rest., Inc.*, 93 F. Supp. 3d 19, 34 (E.D.N.Y. 2015) (internal quotations omitted). Like the FLSA, the NYLL allows a single employee to have

4

multiple "employers." *Chuchuca*, 2014 WL 6674583, at *7.

Plaintiffs allege that individual Defendants W.K. Lee, Sean Oh, and S.J. Lee held an ownership interest in the corporation and possessed operational control over significant functions of Quentin Market. (Compl. ¶¶ 17, 20, 23). Plaintiffs claim that the individual defendants had "substantial control" over the Plaintiffs' working conditions and over the policies and practices governing the Plaintiffs' employment and compensation. (Compl. ¶ 27). Plaintiffs also allege that W.K. Lee and Sean Oh determined the wages of employees, established the schedules, maintained employee records, and had the authority to hire and fire employees. (Compl. ¶¶ 18, 21). These pleadings sufficiently establish that the individual Defendants are "employers" under the FLSA and NYLL.

*ii. Statute of Limitations*

Claims under either the FLSA or the NYLL are limited by the applicable statutes of limitation. Willful violations of the FLSA are governed by a three-year statute of limitations. *McLaughlin v. Richland Shoe Co.,* 486 U.S. 128, 129, 108 S.Ct. 1677, 100 L.Ed.2d 115 (1988) (citing 29 U.S.C. § 255(a)). A violation is willful if "the employer either knew or showed reckless disregard for the matter of whether its conduct was prohibited[.]" *Id.* at 133. The statute of limitations under the NYLL is six years, regardless of willfulness. N.Y. Lab. Law §§ 198(3). Plaintiffs commenced this action on September 23, 2016. (Dkt. No. 1).

Because they claim a willful violation, (Compl. ¶¶ 87, 91), any violation of the FLSA after September 23, 2013, and violations of the NYLL after September 23, 2010, are compensable.

B. Minimum Wage and Overtime Violations

Plaintiffs have raised claims for failure to pay minimum wage and overtime. (Compl. ¶ 4). The FLSA and the NYLL set minimum hourly wages that employers must pay workers such as the Plaintiffs. 29 U.S.C. § 206; N.Y. Lab. Law § 652. Both the FLSA and NYLL also require employers to pay overtime wages, equal to one and one-half the employee's regular salary, for every hour worked in excess of forty hours in any given week. 29 U.S.C. § 207(a); N.Y. Lab. Law § 651; 12 NYCRR § 142-2.2. Under both statutes, employers are required to maintain records of employees' wage and hours. 29 U.S.C. § 211(c); 29 C.R.F. § 516.2; N.Y. Lab. Law § 195(2-4). "[W]hen an employer fails to maintain accurate records or where, as here, no records have been produced as a consequence of a defendant's default, courts have held that the plaintiff['s] recollection and estimates of hours worked are presumed to be correct." *Gunawan v. Sake Sushi Rest.*, 897 F. Supp. 2d 76, 88 (E.D.N.Y. 2012).

For purposes of determining whether Plaintiffs were paid the prevailing minimum wage, the Court must determine their regular hourly rate of pay. Because the New York Hospitality Industry Wage Order does not cover these Plaintiffs,[2] the regular hourly rate of pay equals the Plaintiffs' total weekly pay

---

[2] Under the New York Hospitality Industry Wage Order, an employee's regular hourly rate is determined by dividing the employee's total weekly pay by 40 hours. N.Y. Comp. Codes R. & Regs. tit. 12, § 146-3.5. This regulation defines the "hospitality industry" as a "restaurant" or "hotel," and it defines a "restaurant" as "any eating or drinking place that prepares and offers food or beverage for human consumption either on any of its premises or by such service as catering, banquet, box lunch, curb service or counter service to the public, to employees, or to members or guests of members . . . ." N.Y. Comp. Codes R. & Regs. tit. 12, § 146-3.1(a), (b). Plaintiffs have offered no evidence that Quentin Market is a

divided by the total number of hours work. *Bedasie v. Mr. Z Towing, Inc.*, No.13-CV-5453 (CLP), 2017 WL 1135727, at *31 (E.D.N.Y. Mar. 24, 2017) (citing N.Y. Comp. Codes R. & Regs. tit. 12, § 142-2.16).

Throughout their employment with Defendants, Plaintiffs worked six days per week, nine to twelve hours per day, and approximately fifty-four to seventy hours per week. (Compl. ¶¶ 40-41, 56-57). Both Plaintiffs regularly worked more than forty hours each week while receiving fixed salaries that did not include overtime compensation at one and one-half their regular hourly rate. (Compl. ¶¶ 40-44). Therefore, Plaintiffs have adequately pleaded that the Defendants violated the FLSA and NYLL overtime requirements.

Defendants did not violate the minimum wage requirements with respect to Perez Campos.[3] However, from December 31, 2014, to October 31, 2015, Gonzalez worked about seventy hours per week but was paid a fixed salary of $580-600 per week. (Compl. ¶ 56, 60-61). From December 31, 2014, until May 31, 2015, Gonzales earned $8.23 per hour, and from June 1, 2015, to October 31, 2015, Gonzales earned $8.57 per hour. From December 31, 2014, to December 30, 2015, the applicable minimum wage was $8.75 per hour. *See* N.Y. Lab. Law § 652. Therefore, Defendants failed to pay Gonzales the prevailing minimum wage from December 31, 2014 to October 31, 2015. For all other times during the applicable employment period, Gonzales did receive at or above the minimum wage.[4]

C. Spread-of-Hours Liability

Under the NYLL spread-of-hours provision, employees who make minimum wage or less are entitled to an additional hour of pay, at the prevailing minimum wage, for every day they work more than 10 hours. N.Y. Comp. Codes R. & Regs. tit. 12, §§ 142-2.4; *see also Fermin*, 93 F. Supp. 3d at 45–46 ("A limitation upon a plaintiff's eligibility to recover for spread-of-hours is that the plaintiff not earn more than the minimum wage."); *Sosnowy v. A. Perri Farms, Inc.*, 764 F. Supp. 2d 457, 474 (E.D.N.Y. 2011) ("[T]he spread-of-hours provision is properly limited to enhancing the compensation of those receiving only the minimum required by law.") (quoting *Almeida v. Aguinaga*, 500 F. Supp. 2d 366, 369–70 (S.D.N.Y. 2007)).

Perez Campos's rate of pay exceeded the minimum wage for the entire period in question. *See* Appendix A. Thus, Perez Campos is not entitled to spread of hours pay under the NYLL.

From December 31, 2014, to October 31, 2015, Gonzales worked more than ten hours per day and received less than the prevailing minimum wage. *See* Appendix B. During this period, Gonzales should have received spread-of-hours compensation. *See* N.Y. Comp. Codes R. & Regs. tit. 12, §§ 142-2.4. However, even though Gonzales worked more than ten hours throughout his

---

restaurant for the purposes of this regulation other than the vague allegation that Gonzales was a "deli worker." Such non-existent or vague allegations are insufficient to establish that Plaintiffs are hospitality industry employees. Thus, the Court will apply the New York Miscellaneous Industries and Occupations Wage Order, N.Y. Comp. Codes R. & Regs. tit. 12 § 142, to calculate liability and damages.

[3] Perez Campos's regularly hourly rate never fell below $11.00 per hour. *See infra* Appendix A. The New York State minimum wage did not rise above $9.00 per hour during the period in question. *See* N.Y. Lab. Law § 652.

[4] *See infra* Appendix B.

employment, he made more than the minimum wage prior to December 31, 2014, and after October 31, 2015. Therefore, Gonzales is not entitled to spread-of-hours pay during these periods.

### D. Liquidated Damages

Under the FLSA, any employer who violates the minimum wage or overtime provisions is liable for an equal amount in liquidated damages unless "the employer shows to the satisfaction of the court that the act or omission giving rise to such action was in good faith and that he had reasonable grounds for believing that his act or omission was not a violation of the Fair Labor Standards Act." 29 U.S.C §§ 216(b), 260. "The employer bears the burden of proving good faith and reasonableness, but the burden is a difficult one, with double damages being the norm and single damages the exception." *Herman v. RSR Sec. Servs. Ltd.*, 172 F.3d 132, 142 (2d Cir. 1999). Where the plaintiff has demonstrated a violation of the minimum wage, overtime, or spread-of-hours provisions, NYLL provides for liquidated damages "unless the employer proves a good faith basis to believe that its underpayment of wages was in compliance with the law." N.Y. Lab. Law § 198 (1-a). NYLL provided for 25% liquidated damages until April 9, 2011, when the amount increased to 100%. *Id*.

Here, Plaintiffs allege that Defendants willfully violated both the FLSA and the NYLL. (Compl. ¶¶ 87, 91, 95, 99). Because the Defendants have defaulted, they have failed to carry their burden of demonstrating that these violations were not willful. *See Herman*, 172 F.3d at 142. Thus, Defendants are liable for liquidated damages for violations of minimum wage, overtime, and spread-of-hours regulations.

### E. Wage Theft Prevention Act Liability

Plaintiffs claim that Defendants violated NYLL § 195 also known as the Wage Theft Prevention Act ("WTPA"). Section 195(1) of the WTPA requires an employer to "provide his or her employees . . . . at the time of hiring, a notice containing [among other things] the rate or rates of pay and basis thereof." N.Y. Lab. Law § 195(1). Although Plaintiffs claim that they never received a notice at hiring, both Plaintiffs were hired prior to April 9, 2011, when the WTPA took effect. Therefore, Defendants are not liable for violating Section 195(1). *Carter v. Tuttnaeur U.S.A. Co.*, 78 F. Supp. 3d 564, 570 (E.D.N.Y. 2015).

Section 195(3) of the WTPA requires employers to provide their employees with written wage statements containing, *inter alia*, "the dates of work covered by that payment of wages; name of employee; name of employer; address and phone number of employer; rate or rates of pay and basis thereof." N.Y. Lab. Law § 195(3). An employer who violates this requirement is liable to the employee at a rate of $250 per day to a maximum of $5,000. N.Y. Lab. Law § 198(1-d). Here, Plaintiffs allege that they never received accurate wage statements with their weekly pay as required by the NYLL beginning on April 9, 2011. (Compl. ¶¶ 49, 66). Thus, Defendants are liable for violating Section 195(3) of the WTPA for both Plaintiffs.

## III. Damages

Having established liability, Plaintiff must provide an evidentiary basis such that damages can be "ascertained with reasonable certainty." *Metro Foundation Contractors, Inc.*, 699 F.3d at 234. When a defendant defaults, they deprive the plaintiff "of the necessary employee records required by

7

the FLSA, thus hampering plaintiff's ability to prove his damages." *Santillan v. Henao*, 822 F. Supp.2d 284, 293–94 (E.D.N.Y. 2011). In such situations, a plaintiff's sworn declarations "containing information as to hours worked and rates of pay based on estimation and recollection," even if the information provided is general and not detailed, is considered a sufficient basis for the determination of damages. *Id* at 293; *Herrera v. Tri-State Kitchen and Bath, Inc.*, No. 14-CV-1695 (ARR)(MDG), 2015 WL 1529653, at *8 (E.D.N.Y. Mar. 31, 2015) (finding inquest hearing unnecessary where plaintiffs submitted sworn statements regarding their pay rates and hours worked). Here, Plaintiffs' Affidavits provide sufficient evidence to determine damages. (*See* Dkt. No. 37-8 ("Perez Campos Aff."); Dkt. No. 37-9 ("Gonzales Aff.")).

### A. Ricardo Perez Campos[5]

#### i. Overtime Owed

According to Perez Campos's Affidavit, from September 2010, until January 2015, he was paid $750 weekly for 64 hours of work. (Perez Campos Aff. ¶¶ 10, 13). This represents a regular rate of $11.72 per hour ($750 / 64 hours). Perez Campos is therefore entitled to an overtime rate of $17.58 an hour ($11.72 * 1.5). He is owed unpaid overtime wages on 24 hours per week (64 hours - 40 hours) for 223 weeks for a total of $31,362.72 ($5.86 * 24 hours per week * 223 weeks). From January 2015 until September 2015, Perez Campos worked 58 hours and received $750 per week. (Perez Campos Aff. ¶¶ 11, 13). This represents a regular rate of $12.93 per hour ($750 / 58 hours). During this period, Perez Campos should have received $19.40 per hour ($12.93*1.5) for overtime. He is owed unpaid overtime wages on 18 hours per week (58 hours - 40 hours) for 35 weeks for a total of $4,076.1 ($6.47 * 18 hours per week * 35 weeks). From September 2015 until July 23, 2016, Perez Campos received $800 per week for 58 hours worked. (Perez Campos Aff. ¶¶ 11, 14). This represents a regular rate of $13.79 per hour ($800 / 58 hours). During this period, Perez Campos's overtime rate was $20.69 per hour ($13.79*1.5). He is owed unpaid overtime wages on 18 hours per week for 46 weeks for a total of $5,713.20 ($6.90 * 18 hours per week * 46 weeks). In total, Defendants owe Perez Campos $41,152.02 in unpaid overtime.

#### ii. Liquidated damages

Plaintiffs request liquidated damages under both the FLSA and the NYLL. (Compl. ¶ (f), (n)). However, a cumulative award for liquidated damages under both the FLSA and NYLL is no longer available in the Second Circuit. *Chowdhury v. Hamza Express Food Corp.*, 666 F. App'x 59, 60 (2d Cir. 2016). Because the Plaintiffs should "be permitted to recover under the statute that provides the greatest relief," *Santana v. Latino Express Restaurants, Inc.*, 198 F. Supp. 3d 285, 294 (S.D.N.Y. 2016) (internal quotations omitted), Plaintiffs here should be awarded liquidated damages under the NYLL which goes back six years and allows for an additional recovery of pre-judgment interest. *See* N.Y. Lab. Law § 198(1–a); *see also Brock v. Superior Care, Inc.*, 840 F.2d 1054, 1064 (2d Cir. 1988) ("It is well settled that in an action for violations of the Fair Labor Standards Act prejudgment interest may not be awarded in addition to liquidated damages.").

Prior to April 9, 2011, the NYLL only allowed employees to recover twenty-five

---

[5] For a complete breakdown of damages for Perez Campos, *see infra* Appendix A.

8

percent of the total minimum wage, overtime, and spread-of-hours pay owed as liquidated damages. However, as of April 9, 2011, the NYLL allows employees to recover one-hundred percent of their minimum wage, overtime and spread-of-hours pay owed as liquidated damages. N.Y. Lab. Law § 198 (1-a). Perez Campos is thus owed $984.48 in liquidated damages prior to April 9, 2011, and $37,214.10 in liquidated damages from April 9, 2011, until July 23, 2016, for a total of $38,198.58.

### iii. Statutory damages

Where an employer violates NYLL § 195(3), they are liable to the employee at a rate of $250 per day to a maximum of $5,000. N.Y. Lab. Law § 198(1-d). Here Defendants owe Perez Campos the maximum penalty of $5,000 for failure to comply with NYLL § 195(3). (*See* Perez Campos Aff. ¶ 19; Gonzalez Aff. ¶ 20).

### B. Gerardo Gonzalez[6]

### i. Minimum Wage

From December 31, 2014, to December 30, 2015, the minimum wage in New York was $8.75 per hour. *See* N.Y. Lab. Law § 652. From December 31, 2014, to May 31, 2015, Gonzalez worked about seventy hours per week but was paid a fixed salary of $580 per week. (Compl. ¶ 56, 60-61). Thus, during this period Gonzales earned $8.29 per hour ($580 / 70 hours). From June 1, 2015, to October 31, 2015, Gonzales worked 70 hours per week and earned $600 per week, or $8.57 per hour ($600 / 70 hours). Therefore, from December 31, 2014 until October 31, 2015, Defendants paid Gonzalez less than the minimum wage.

From December 31, 2014, to May 31, 2015, Gonzalez earned $0.46 per hour below the minimum wage, for an underpayment of $32.20 per week ($0.46*70 hours). Defendants thus owe Gonzalez $708.40 ($32.20 * 22 weeks) in minimum wage damages during this time. From June 1, 2015, to October 31, 2015, Gonzales earned $0.18 per hour below minimum wage for an underpayment of $277.20 ($0.18 * 70 hours per week * 22 weeks). In total, Defendants owe Gonzalez $985.60 for failure to pay minimum wage.

### ii. Overtime

According to Gonzalez's Affidavit, from September 2010 until January 2013, he was paid $560 weekly for 70 hours of work. (Gonzalez Aff. ¶¶ 10, 13). This represents a regular rate of $8.00 per hour ($560 / 70 hours). Gonzales is therefore entitled to unpaid overtime of $12.00 an hour ($8.00 * 1.5). He is owed unpaid overtime wages on 30 hours per week (70 hours - 40 hours) for 108 weeks for a total of $12,960.00 ($4.00 * 30 hours per week * 108 weeks). From January 2013 until December 30, 2014, Gonzalez worked 70 hours and received $580 per week. (Gonzalez Aff. ¶¶ 10, 14). This represents a regular rate of $8.29 per hour ($580 / 70 hours). During this period, Gonzalez should have received an additional $12.43 per hour ($8.29*1.5) for overtime. He is owed unpaid overtime wages on 30 hours per week for 104 weeks for a total of $12,916.80 ($4.14 * 30 hours per week * 104 weeks).

From December 31, 2015, until May 31, 2015, Gonzalez received $580 per week for 70 hours worked for a regular rate of $8.29 per hour. (Gonzalez Aff. ¶¶ 10, 15). However, on December 31, 2015, the New

---

[6] For a complete accounting of Gonzalez's damages, *see infra* Appendix B.

9

York minimum wage increased to $8.75 per hour, *see* N.Y. Lab. Law § 652, or $0.46 more than Gonzalez received per hour. Because the overtime rate is calculated from the minimum hourly wage, Gonzalez should have received $13.13 per hour ($8.75*1.5) for overtime. He is owed unpaid overtime wages on 30 hours per week for 22 weeks for a total of $2,890.80 ($4.38 * 30 hours per week * 22 weeks). From June 2015 to November 2015, Gonzales was paid $600 per week for 70 hours, for an hourly rate of $8.57 per hour. As this rate is also below the minimum wage of $8.75, Gonzalez should have received an overtime rate of $13.13 for a total of $2,890.80 ($4.38 * 30 hours per week * 22 weeks) in overtime pay during this period. From November 2015 until June 23, 2016, Gonzalez worked 64 hours per week and was paid $600 per week. (Gonzalez Aff. ¶¶ 11, 15). This represents a regular hourly rate of $9.38 ($600 / 64 hours). During this period, Gonzalez should have received an additional $14.07 per hour ($9.38*1.5) for overtime. He is owed unpaid overtime wages on 24 hours per week for 38 weeks for a total of $4,277.28 ($4.69 * 24 hours per week * 38 weeks). In total, Defendants owe Gonzalez $37,135.68 in unpaid overtime.

### iii. Spread of Hours

Throughout his entire employment with Defendants, Gonzalez worked more than ten hours per day for six days each week. (Gonzalez Aff. ¶¶ 10-11). Defendants never paid Gonzales an extra hour at minimum wage for his shifts lasting more than ten hours. (Gonzales Aff. ¶ 22); N.Y. Comp. Codes R. & Regs. tit. 12, §§ 142-2.4. However, Gonzales was only eligible for spread-of-hours pay during the ten-month period from December 31, 2014, to October 31, 2015, that he was paid below minimum wage. *See Fermin*, 93 F. Supp. 3d at 45. Therefore, Defendants owe Gonzalez $2,310.00 in spread-of-hours pay.

### iv. Liquidated damages

Gonzales is entitled to recover liquidated damages under the NYLL. N.Y. Lab. Law § 198 (1-a). Defendants owe Gonzales liquidated damages of twenty-five percent of his unpaid minimum wage, overtime, and spread-of-hours pay from September 23, 2010, to April 9, 2011, for a total of $840.00. Defendants owe Gonzalez liquidated damages of one-hundred percent from April 9, 2011, to July 23, 2016, or $37,071.28. In total, Defendants owe Gonzales liquidated damages in the amount of $37,911.28.

### v. Statutory damages

Defendants failed to provide Gonzalez with proper wage statements each payday. Accordingly, Defendants owe Gonzalez $5,000 in statutory damages for violating NYLL § 195(3). (*See* Gonzalez Aff. ¶ 20).

### C. Pre-judgment Interest

Under NYLL, the Plaintiffs are entitled to prejudgment interest on all unpaid wages at a statutory rate of nine percent. N.Y. Lab. Law § 198 (1-a); N.Y. Civ. Prac. L. & R. §§ 5001(b), 5004. "Prejudgment interest is calculated on the unpaid wages due under the NYLL, not on the liquidated damages awarded under the state law." *Fermin*, 93 F. Supp. 3d at 49 (internal quotations omitted). Courts have "wide discretion in determining a reasonable date from which to award pre-judgment interest." *Conway v. Icahn & Co.*, 16 F.3d 504, 512 (2d Cir. 1994). Most courts in this district calculate simple prejudgment interest in NYLL actions from the midpoint date of the claims through the date judgment is entered. *Fermin*, 93 F. Supp. 3d at 49 (quoting *Gortat v. Capala Bros.*, 949 F. Supp. 2d 374, 386 (E.D.N.Y. 2013)). In this case, the midpoint of both of the Plaintiffs'

claims is August 24, 2013. Therefore, Plaintiffs should receive pre-judgment interest of nine percent per day on their minimum wage, overtime, and spread of hours damages from August 24, 2013 until the date of judgment.

D. Attorney's Fees and Costs

As the prevailing party following the Defendants' default, Plaintiffs seek to recover reasonable attorneys' fees and costs. *See* 29 U.S.C. § 216(b); N.Y. Lab. Law § 663(1). In the Second Circuit, the amount of attorney's fees awarded to a prevailing party is determined by calculating the "presumptively reasonable fee" or what a "reasonable, paying client would be willing to pay." *Simmons v. N.Y. City Transit Auth.*, 575 F.3d 170, 174 (2d Cir. 2009); *Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany and Albany County Bd. Of Elections*, 522 F.3d 182, 190 (2d Cir. 2008); *E. Sav. Bank, FSB v. Strez*, No. 11-cv-1543 (ENV) (LB), 2013 WL 6834806, at *4 (E.D.N.Y. Dec. 20, 2013). The court can determine this fee by multiplying the hours reasonably spent on the litigation by a "reasonable hourly rate" based on the "prevailing [hourly rate] in the community . . . where the district court sits." *Arbor Hill*, 522 F.3d at 190.

The party seeking reimbursement of attorney's fees bears the burden of proving the reasonableness and the necessity of the hours spent and the rates charged. *See generally N.Y.S. Ass'n for Retarded Children, Inc. v. Carey*, 711 F.2d 1136, 1148 (2d Cir. 1983). Contemporaneous time records that account for "the date, the hours expended, and the nature of the work done" must accompany requests for attorney's fees. *Koon Chun Hing Kee Soy & Sauce Factory, Ltd. v. Kun Fung USA Trading Co. Inc.*, No. 07-cv-2568 (JG) (SMG), 2012 WL 1414872, at *10 (E.D.N.Y. Jan. 20, 2012) (quoting *Carey*, 711 F.2d at 1148). When establishing whether the number of hours billed are reasonable, the court should remove hours that are "excessive, duplicative, or unnecessary." *Finkel v. Metro Sign and Maint. Corp.*, No. 09-cv-4416 (SJ) (CLP), 2010 WL 3940448, at *16 (E.D.N.Y. Aug. 12, 2010), *adopted*, 2010 WL 3927512 (E.D.N.Y. Oct. 5, 2010).

In support of their request for fees and costs, Plaintiffs submit a declaration by attorney Colin Mulholland, (Dkt. No. 37 ("Mulholland Decl.")), billing records for attorneys Michael Faillace, Colin Mulholland, and Haleigh Amant, and a list of disbursements. (Dkt. No. 37-11, ("Billing Records")). Plaintiffs record 4.9 hours for Michael Faillace at $450 per hour, 7.1 hours for Colin Mulholland at $350 per hour, and 9 hours for Haleigh Amant at $250 per hour, for a total of 21 total hours and $6,940.00 in fees. (Mulholland Decl. ¶ 84; Billing Records). Time records reflect a reasonable amount of time spent on each task.

To determine reasonable hourly rates, courts in this Circuit follow the forum rule set forth in *Simmons*, which instructs the district court to use the prevailing hourly rates in the district where it sits. *See Simmons*, 575 F.3d at 175–76. Courts in this district have awarded, at the high end of the spectrum, $450 for partners, $300 for associates, and $200 for recent graduates. *See Cuevas v. Ruby Enterprises of New York, Inc.*, No. 10-cv-5257 (JS) (WDW), 2013 WL 3057715, at *2 (E.D.N.Y. June 17, 2013) (internal citations omitted). Michael Faillace is the managing partner at Michael Faillace & Associates, P.C. and has been practicing employment law since 1983. (Mulholland Decl. ¶ 84(i)). His thirty-five years of experience and expertise in the field warrant the fee of $450 per hour. Colin Mulholland has been in practice since 2012 and has been an associate at Michael Faillace &

11

Associates, P.C. since 2017. (Mulholland Decl. ¶ 84(ii)). Haleigh Amant is a first year associate who graduated from law school in 2017. (Mulholland Decl. ¶ 84(iii)). The requested hourly rates for Mulholland and Amant exceed the hourly rates for associates in this district with comparable experience. Thus, I respectfully recommend reducing the hourly rate of Mulholland to $250 per hour and the hourly rate of Amant to $175 per hour. *See Quiroz v. Luigi's Dolceria, Inc.*, No. 14-CV-871 (VVP), 2016 WL 6311868, at *2 (E.D.N.Y. Oct. 28, 2016) (awarding $200-$300 per hour for senior associates and $100-$200 per hour for junior associates). This would reduce the overall attorney's fees award to $5,555.00.

Plaintiffs also submit costs totaling $615.00, consisting of the $400 filing fee and $215 for process servers. (Billing Records at 2). I find these costs to be reasonable and accordingly recommend awarding attorney's fees and costs in the amount of $6,170.00.

## CONCLUSION

Based on the foregoing, the undersigned respectfully recommends that Plaintiffs be awarded damages in the total sum of $173,863.16 plus pre- and post-judgment interest. This amount includes:

1. $84,350.60 in damages for overtime and spread-of-hours violations, and liquidated and statutory damages, for Perez Campos;
2. $83,342.56 in damages for minimum wage, overtime, and spread-of-hours violations, and liquidated and statutory damages, for Gonzalez;
3. $6,170 in costs and attorney's fees.

Any objection to this Report and Recommendation must be filed with the Clerk of the Court and the Honorable Dora L. Irizarry within fourteen (14) days of receipt of this Report. Failure to file objections within this specified time waives the right to appeal the District Court's order. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(e), 72; *Small v. Sec'y of Health and Human Servs.*, 892 F. 2d 15, 16 (2d Cir. 1989).

SO ORDERED.

/s/
RAMON E. REYES, JR.
United States Magistrate Judge

Dated: October 17, 2018
      Brooklyn, New York

**Appendix A**
**Damage Calculations for Ricardo Perez Campos**

| Time Period | 9/23/10-4/8/11 | 4/9/11-12/31/14 | 1/1/15-8/31/15 | 9/1/15-7/23/16 | TOTAL AWARD: |
|---|---|---|---|---|---|
| Weekly Pay | $750.00 | $750.00 | $750.00 | $800.00 | |
| Regular Hourly Rate[1] | $11.72 | $11.72 | $12.93 | $13.79 | |
| Overtime Rate[2] | $17.58 | $17.58 | $19.40 | $20.69 | |
| Overtime Hours Worked Per Week[3] | 24 | 24 | 18 | 18 | |
| Overtime Pay Owed Per Week[4] | $140.64 | $140.64 | $116.46 | $124.20 | |
| Total Weeks In Time Period | 28 | 195 | 35 | 46 | |
| **Total Overtime Owed[5]** | $3,937.92 | $27,424.80 | $4,076.10 | $5,713.20 | **$41,152.02** |
| **Total Back Wages Owed** | $3,937.92 | $27,424.80 | $4,076.10 | $5,713.20 | **$41,152.02** |
| Liquidated Damages Rate | 25% | 100% | 100% | 100% | |
| **Total Liquidated Damages Owed[6]** | $984.48 | $27,424.80 | $4,076.10 | $5,713.20 | **$38,198.58** |
| Statutory Damages Owed | $0.00 | $5,000.00 | $0.00 | $0.00 | **$5,000.00** |
| Pre-Judgment Interest Rate | | | | | 9% from 8/24/2013 |
| **Total Damages** | | | | | **$84,350.60** |

1: Regular Hourly Rate = (total pay per week) /(total hours worked per week). *See* 29 C.F.R. § 778.109.

2: Overtime Rate = (Regular Hourly Rate) x (1.5)

3: Overtime hours worked per week: Calculated based on Perez Campos' Affidavit. (Dkt. No. 37-8).

4: Overtime Pay Owed Per Week = (Overtime Rate-Regular Rate) x (Overtime Hours Worked Per Week)

5: Total Overtime Owed = (Overtime Pay Owed Per Week) x (Total Weeks In Time Period).

6: Liquidated Damages = (Spread of Hours Owed + Total Overtime Owed + Minimum Wage Owed) x (Liquidated Damages Rate)

13

**Appendix B**
**Damage Calculations for Gerardo Gonzalez**

| Time Period | 9/23/10-4/8/11 | 4/9/11-12/31/12 | 1/1/13-12/30/14 | 12/31/14-5/31/15 | 6/1/15-10/31/15 | 11/1/15-7/23/16 | TOTAL AWARD: |
|---|---|---|---|---|---|---|---|
| Weekly Pay | $560.00 | $560.00 | $580.00 | $580.00 | $600.00 | $600.00 | |
| Regular Hourly Rate[1] | $8.00 | $8.00 | $8.29 | $8.29 | $8.57 | $9.38 | |
| Minimum Wage | $7.25 | $7.25 | $8.00 | $8.75 | $8.75 | $9.00 | |
| Amount under minimum wage | | | | $0.46 | $0.18 | | |
| Overtime Rate[2] | $12.00 | $12.00 | $12.43 | $13.13 | $13.13 | $14.07 | |
| Overtime Hours Worked Per Week[3] | 30 | 30 | 30 | 30 | 30 | 24 | |
| Overtime Pay Owed Per Week[4] | $120.00 | $120.00 | $124.20 | $131.40 | $131.40 | $112.56 | |
| Total Weeks In Time Period | 28 | 90 | 104 | 22 | 22 | 38 | |
| **Total Minimum Wage Owed[5]** | | | | $708.40 | $277.20 | | **$985.60** |
| **Total Overtime Owed[6]** | $3,360.00 | $10,800.00 | $12,916.80 | $2,890.80 | $2,890.80 | $4,277.28 | **$37,135.68** |
| **Spread of Hours Owed[7]** | | | | $1,155.00 | $1,155.00 | | **$2,310.00** |
| **Total Back Wages Owed** | $3,360.00 | $10,800.00 | $12,916.80 | $4,754.20 | $4,323.00 | $4,277.28 | **$40,431.28** |
| Liquidated Damages Rate | 25% | 100% | 100% | 100% | 100% | 100% | |
| **Total Liquidated Damages Owed[8]** | $840.00 | $10,800.00 | $12,916.80 | $4,754.20 | $4,323.00 | $4,277.28 | **$37,911.28** |
| **Statutory Damages Owed** | | $5,000.00 | | | | | **$5,000.00** |
| Pre-Judgment Interest Rate | | | | | | | 9% from 8/24/2013 |
| **Total Damages** | | | | | | | **$83,342.56** |

1: Regular Hourly Rate = (total pay per week) /(total hours worked per week). *See* 29 C.F.R. § 778.109.
2: Overtime Rate = (Regular Hourly Rate) x (1.5)
3: Overtime hours worked per week: Calculated based on Perez Campos' Affidavit. (Dkt. No. 37-8).
4: Overtime Pay Owed Per Week = (Overtime Rate - Regular Rate) x (Overtime Hours Worked Per Week)
5. Total Minimum Wage Owed = (minimum wage owed per hour) x (number of hours worked) x (Total weeks in time period)
6: Total Overtime Owed = (Overtime Pay Owed Per Week) x (Total Weeks In Time Period)
7: Spread of Hours = (minimum wage rate) x  (number of recorded +10 hour days during time period)
8: Liquidated Damages = (Spread of Hours Owed + Total Overtime Owed + Minimum Wage Owed) x (Liquidated Damages Rate)

14